FARMERS & MERCHANTS MUTUAL FIRE INSURANCE
COMPANY v LeMIRE

Docket No. 105663. Submitted October 5, 1988, at Marquette. Decided
December 20, 1988.

Norman and Susan LeMire were insured under a homeowner's
insurance policy issued by Farmers & Merchants Mutual Fire
Insurance Company. The policy provided liability coverage for
bodily injury and property damage, but excluded from such
coverage liability for such damages which were intentionally
caused by or at the direction of the insured. The policy further
provided that the insurer would defend any suit seeking dam-
ages, provided that the suit arose out of bodily injury or
property damage not excluded under the policy coverage. The
LeMires became involved in a barroom brawl in which Ronald
Johnson was allegedly injured. Johnson brought an action
against the LeMires and others, alleging both assault and
battery and negligence. The LeMires demanded that Farmers &
Merchants Mutual defend them in the Johnson action. Farmers
& Merchants Mutual refused the demand to defend on the
basis that the insurance coverage did not apply to personal
injuries intentionally caused by the insureds and, thereafter,
commenced a declaratory judgment action in Marquette Circuit
Court to determine the parties' rights and obligations under
the policy. Defendants filed a counterclaim. Both plaintiff and
defendants moved for summary disposition. The trial court,
Edward A. Quinnell, J., granted defendants' motion for sum-
mary disposition, denied plaintiff's motion, and ordered plaintiff
to defend defendants in the underlying civil action. Plaintiff
appealed.

The Court of Appeals *held:*

Since the underlying action contained a count based on
negligence, which is arguably covered by the insurance policy,
plaintiff has the duty to defend even though there were also

REFERENCES

Am Jur 2d, Insurance §§ 1408 *et seq.*

Construction and application of provision of liability insurance
policy expressly excluding injuries intended or expected by in-
sured. 31 ALR4th 957.

pled theories for which plaintiff would not be obligated to pay under the policy.

Affirmed.

1. INSURANCE — DUTY TO DEFEND.

The duty of an insurer to defend an insured depends upon the allegations in the complaint of the third party in his action against the insured and may extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured are even arguably within the policy coverage.

2. INSURANCE — DUTY TO DEFEND.

An insurer has a duty to defend despite theories of liability asserted against any insured which are not covered under the policy if there are any theories of recovery that fall within the policy.

3. INSURANCE — INSURERS — DUTY TO DEFEND — DUTY TO PAY.

The duty of an insurer to defend an action brought against the insured by a third party is severable from the duty to pay; that an insurer may· ultimately be found not liable is a matter separate and apart from its obligation to defend the insured.

*Peacock & Ingleson, P.C.* (by *Harry Ingleson, II* and *William J. Maynard*), for plaintiff.

*Bridges & Houghton* (by *E. Nickolas Bridges*), for defendants.

Before: GRIBBS, P.J., and CYNAR and J. T. KALLMAN,* JJ.

PER CURIAM. This case involves a declaratory action brought by plaintiff, Farmers & Merchants Mutual Fire Insurance Company, to determine if plaintiff had a duty to defend its insureds, defendants, Norman and Susan LeMire, in an underlying civil action. Plaintiff appeals as of right from the trial court's December 14, 1987, order which granted defendants' motion for summary disposi-

* Circuit judge, sitting on the Court of Appeals by assignment.

tion and ordered plaintiff to defend defendants in the underlying civil action. We affirm.

Plaintiff issued a homeowner's insurance policy to defendants. The policy was effective from February 26, 1986, to February 26, 1987.

The personal liability coverage portion of the insurance policy provides:

> We pay, up to our limit of liability, all sums for which any insured is legally liable because of bodily injury or property damage caused by an occurrence to which this coverage applies. We will defend any suit seeking damages, provided the suit resulted from bodily injury or property damage not excluded under this coverage.

The insurance policy contains the following exclusion:

> This policy does not apply to liability:
>
>        *   *   *
>
> h. resulting from *bodily injury* or *property damage* caused intentionally by or at the direction of any *insured* . . . .

On February 9, 1987, defendants attended a women's pool tournament at the Dry Dock Bar near Marquette, Michigan. Susan LeMire was a participant in the pool matches at the bar. Defendants were accompanied by several of their friends. Ronald Johnson and his girlfriend, Wanda Lindstrom, were also at the Dry Dock Bar that evening. During that evening, a confrontation between Johnson and defendants developed and eventually a barroom brawl occurred. As a result of the incident, Johnson sustained injuries allegedly caused by defendants.

Affidavit and deposition accounts present widely divergent versions of the barroom brawl. Accord-

ing to defendants' deposition testimony, Johnson was harassing and insulting Mrs. LeMire throughout the evening. Defendants indicated that they did not know Johnson before the night of the incident. At one point, Mr. LeMire stood up and told Johnson to "knock it off." In order to leave the bar, Johnson had to walk past the LeMires. When Johnson started walking in the LeMires' direction, Mr. LeMire was unsure if Johnson was walking out of the bar or if he was walking towards Mrs. LeMire. Mr. LeMire did not recall a direct confrontation with Johnson. Mr. LeMire only remembers that he suddenly wound up on the floor and that there were people all over the place.

Mrs. LeMire also testified that Ronald Johnson made lewd and insulting remarks toward her throughout the evening. When the brawl began, she believed that Johnson and her husband went for each other at the same time. She observed her husband as he was thrown to the floor with his jacket pulled over his head. She immediately jumped on Johnson's back to assist her husband. Then several other people attempted to break up the fight. As Mrs. LeMire stood over Johnson pulling on his back and neck, she felt him being suddenly propelled into the bar's jukebox. She did not know how Johnson hit the jukebox, but she believed that everyone just fell and that Johnson fell into the jukebox. When Mrs. LeMire stood up, her pants were cut and she had Johnson's blood on her shirt.

However, the affidavits of several other witnesses were inconsistent with defendants' version of the brawl. The witnesses indicated that Susan LeMire was drunk and obnoxious and that she was the one that was harassing Johnson and Lindstrom that evening. The witnesses agreed that Johnson and Lindstrom did not respond to Mrs.

LeMire's insulting remarks. Johnson apparently did not know Mrs. LeMire and chose to ignore her. One of the witnesses, Judy Soeltner, felt that something was going to happen and warned Johnson to watch out for Susan LeMire. As Johnson and Lindstrom attempted to leave the bar, Mr. LeMire jumped Johnson and knocked Johnson to the floor. Mrs. LeMire and her friends then joined in the fight. Mrs. LeMire hit Johnson on the head with an ashtray and pulled his hair. Eventually, Johnson was forced into the jukebox. As a result of the fracas, Mr. Johnson sustained injuries to his right hand and right eye.

On July 29, 1987, Ronald Johnson filed a complaint against Norman and Susan LeMire and several others for the injuries he received during the brawl at the Dry Dock Bar. In his complaint, Johnson alleged counts of assault and battery and negligence against the LeMires.

Subsequently, the LeMires requested that plaintiff defend them in the lawsuit. Plaintiff refused to defend the LeMires and claimed that its insurance coverage did not apply to personal injuries intentionally caused by its insureds. On September 22, 1987, plaintiff brought a declaratory action in Marquette Circuit Court to determine the parties' rights and obligations under the insurance policy. Defendants LeMire counterclaimed. Thereafter, both parties moved for summary disposition.

On December 14, 1987, the Marquette Circuit Court granted defendants' motion for summary disposition and denied plaintiff's motion for summary disposition. The trial court also ordered plaintiff to defend the defendants in the underlying civil action.

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for summary disposition. Plaintiff maintains that the trial court

improperly precluded plaintiff from receiving a "before trial" determination of its declaratory judgment action. We disagree.

The duty of an insurance company to defend its insured arises solely from the language of the insurance contract. *Frankenmuth Mutual Ins Co v Beyer,* 153 Mich App 118, 122; 395 NW2d 36 (1986). The insurer's duty to defend is determined by the allegations in the complaint against the insured. *Id.* An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy. *Detroit Edison Co v Michigan Mutual Ins Co,* 102 Mich App 136, 142; 301 NW2d 832 (1980); *Dochod v Central Mutual Ins Co,* 81 Mich App 63, 67; 264 NW2d 122 (1978). This duty is not limited to meritorious suits and may even extend to actions which are groundless, false, or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. *Detroit Edison Co, supra.*

Additionally, in *Dochod, supra,* p 67, this Court stated:

> When considering whether the insurer has a duty to defend the insured, it must be remembered that the duty to pay is severable from the duty to defend. *Zurich Insurance Co v Rombough,* 384 Mich 228; 180 NW2d 775 (1970). The one is not dependent on the other. That an insurer may ultimately be found not liable, therefore, is a matter separate and apart from its obligation to defend the insured.

In the present case, the underlying civil action alleges counts of assault and battery and negligence against defendants. Although the count of assault and battery is not covered by the instant

homeowner's insurance policy, the count of negligence arguably comes within the policy coverage. *Detroit Edison Co, supra.* Furthermore, in their deposition testimony, defendants have denied that they assaulted or intentionally injured Ronald Johnson. Therefore, we find that plaintiff had a duty to defend the defendants in the underlying civil action.

Plaintiff also argues that the trial court erred by not granting plaintiff's motion for summary disposition on the issue of its duty to defend. We disagree. The allegation of negligence against defendants, even though it might be nonmeritorious or groundless, arguably comes within the policy coverage and imposes a duty on plaintiff to defend the defendants in the underlying civil action. *Detroit Edison Co, supra.* The insurer's duty to defend is severable from its duty to pay damages on its insureds' behalf. *Dochod, supra.* Moreover, if defendants' version of the brawl is to be believed, Mr. Johnson's injuries were not necessarily caused by an intentional act of the defendants. Therefore, we find that the trial court did not err in denying plaintiff's motion for summary disposition.

Affirmed.